**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 13 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered October 13, |
| | : | 2023, at No. 376 WDA 2022, |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered February |
| HAROLD WALKER, | : | 11, 2022, at No. CP-02-CR- |
| | : | 0007381-2019. |
| Appellant | : | |
| | : | ARGUED: November 20, 2024 |

**OPINION**

**CHIEF JUSTICE TODD**                  **DECIDED: AUGUST 19, 2025**

In this appeal by allowance, we consider whether the trial court erred in permitting the Commonwealth to ask potential jurors during *voir dire* whether they would be able to follow the legal principle that the testimony of an alleged victim alone, if believed, is sufficient proof upon which to find a defendant guilty of sexual assault beyond a reasonable doubt. For the reasons that follow, we hold that the trial court did not err in permitting the Commonwealth to pose that question during *voir dire* in the instant case, and, thus, we affirm Appellant Harold Walker's judgment of sentence.

According to the evidence introduced at trial, in 2013, M.W. ("Victim") lived with her mother ("Mother") and infant sister. Appellant, Mother's boyfriend at the time, occasionally would babysit Victim and her sister at night when Mother was at work. Victim testified that, beginning when she was 10 years old, Appellant would enter her bedroom

approximately every other night, remove her underwear, and insert his penis into her vagina. When Victim was 12 years old, she told Mother and both of her grandmothers what Appellant was doing. Victim testified that Mother did not believe her and became angry, and that Victim then began to act out physically, punching and breaking things, and engaging in self-harm (cutting). At some point, Victim also told her doctor, who tested her for sexually transmitted infections; Victim tested positive. When Victim was 16 years old, she also disclosed the abuse to one of her teachers, who contacted the police.

In August 2019, Appellant was charged with Rape of a Child,[1] Statutory Sexual Assault (11 years or older),[2] Unlawful Contact with a Minor – Sexual Offenses,[3] Sexual Assault,[4] Indecent Assault of Person Less than 13 Years of Age,[5] Endangering the Welfare of Children,[6] and Corruption of Minors.[7] Relevant to the instant appeal, on July 22, 2021, prior to trial, the Commonwealth submitted proposed *voir dire* questions to the trial court, including the following:

> Under Pennsylvania law, the testimony of the alleged victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in a sexual assault case. Thus, you may find the defendant guilty if the testimony of the alleged victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?

*Commonwealth v. Walker*, 305 A.3d 12, 16 (Pa. Super. 2023).[8]

---

[1] 18 Pa.C.S. § 3121(c).

[2] *Id.* § 3122.1(b).

[3] *Id.* § 6318(a)(1).

[4] *Id.* § 3124.1.

[5] *Id.* § 3126(a)(7).

[6] *Id.* § 4304(a)(1).

[7] *Id.* § 6301(a)(1)(ii).

[8] The Superior Court observed that, although the certified record in the instant case does not contain a transcript of the *voir dire* proceedings, the Commonwealth did not dispute that the question was asked, nor did it argue that Appellant failed to raise a timely objection. *Walker*, 305 A.3d at 16 n.1. Thus, the court proceeded under the assumption (continued…)

Appellant filed a motion objecting to the proposed *voir dire* question, which the trial court denied. Ultimately, the jury convicted Appellant of all charges, and the trial court sentenced him to an aggregate term of 30½ to 61 years incarceration, followed by 3 years probation. Following the denial of his post-sentence motion, Appellant appealed to the Superior Court, alleging that, in addition to imposing a manifestly excessive sentence, the trial court erred in permitting the Commonwealth to pose the above-quoted *voir dire* question because it did not further the proper purpose of *voir dire*, which, as this Court has explained, is "to ensure the [empaneling] of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court." *Commonwealth v. Knight*, 241 A.3d 620, 640 (Pa. 2020) (citation omitted). Appellant further argued that the *voir dire* question failed to correctly state the law because it did not instruct that (1) the jury must believe the victim's testimony beyond a reasonable doubt, and (2) the testimony must be sufficient to establish each element of the crimes charged.

The Superior Court affirmed Appellant's judgment of sentence in a unanimous published opinion. With respect to the *voir dire* question, the court first observed that the question derives from Pennsylvania Suggested Standard Criminal Jury Instruction ("Pa.SSJI (Crim)") § 4.13B,[9] the note to which specifically indicates that the jury instruction is consistent with the language of 18 Pa.C.S. § 3106; Section 3106, in turn, provides:

---

that the trial court allowed the *voir dire* question, and that Appellant did not waive his challenge thereto.

[9] At the time of Appellant's trial, Pa.SSJI (Crim) § 4.13B provided:

> The testimony of [*name of victim*] standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case. The testimony of the victim in a case such as this need not be supported by other evidence to sustain a conviction. Thus you may find the defendant guilty if the testimony of [*name of victim*] convinces you beyond a reasonable doubt that the defendant is guilty.

Pa.SSJI (Crim) § 4.13B (April 2005 - September 2024). In 2024, the language of § 4.13B was amended to read:

(continued…)

The credibility of a complainant of an offense under this chapter shall be determined by the same standard as is the credibility of a complainant of any other crime. *The testimony of a complainant need not be corroborated in prosecutions under this chapter.* No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.

*Walker*, 305 A.3d at 17 (quoting 18 Pa.C.S. § 3106) (emphasis added).

The Superior Court determined that the Commonwealth had a proper purpose in posing the *voir dire* question, which was to

identify jurors who hold fixed beliefs that are untenable under Section 3106 − specifically, the belief that a defendant's guilt cannot be established beyond a reasonable doubt in a rape case (1) without DNA or other forensic evidence or (2) when the case boils down to the word of the complainant versus the word of the defendant (a so-called "he said, she said" case).

*Id.*

The court further noted that, in two recent unpublished decisions, it held that "*voir dire* questions identical in substance to the question herein were asked for a proper purpose." *Id.* at 17-18 (citing *Commonwealth v. Antill*, 2019 WL 2950181 (Pa. Super. filed July 9, 2019) (finding no error by the trial court in permitting a *voir dire* question that provided: "Under Pennsylvania law, the testimony of the victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty if the testimony of the

---

The testimony of *[name of reported victim]* standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in this case, if the Commonwealth has established all of the elements of the crime beyond a reasonable doubt. The testimony of the reported victim need not be supported by other evidence to sustain a conviction. Thus, after consideration of the evidence, you may find the defendant guilty if the testimony of *[name of reported victim]* convinces you beyond a reasonable doubt that the defendant is guilty.
Pa.SSJI (Crim) § 4.13B (2024).

victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?"); *Commonwealth v. Wilson*, 2020 WL 5423952 (Pa. Super. filed Sept. 10, 2020) (finding no error by the trial court in permitting the following *voir dire* question: "Under Pennsylvania law, the testimony of the alleged victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in a sexual assault case. Thus, you may find the defendant guilty if the testimony of the alleged victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?"), *vacated on other grounds*, 272 A.3d 446 (Pa. 2022)).

The Superior Court also rejected Appellant's argument that the *voir dire* question in the case *sub judice* incorrectly stated the law because "it did not instruct [the jury] that the victim's testimony must be believed beyond a reasonable doubt and be sufficient to establish each element of the crimes with which [he] was charged." *Walker*, 305 A.3d at 19. The court initially observed that the first sentence of the *voir dire* question − that the testimony of the alleged victim, standing alone, is sufficient proof upon which to find the defendant guilty − was a correct statement of the law under 18 Pa.C.S. § 3106 and applicable case law. The Superior Court further highlighted that the second sentence of the *voir dire* question specified that the victim's testimony that the defendant committed the crime must convince the jury beyond a reasonable doubt, thereby accurately informing the jury that the Commonwealth's burden of proof is beyond a reasonable doubt. The court held that there is "no requirement that each sentence of the *voir dire* question include the phrase 'beyond a reasonable doubt.'" *Walker*, 305 A.3d at 19.

Additionally, in response to Appellant's claim that the second sentence of the *voir dire* question was defective because it did not contain the phrase "You may find the defendant guilty if the testimony of the alleged victim *establishes each element of the*

*crime* beyond a reasonable doubt," the Superior Court held that Appellant failed to cite any case "that requires this level of detail in a *voir dire* question." *Id.* (emphasis original). Moreover, the court opined that, even if the *voir dire* question itself "lacked sufficient detail, the [trial] court corrected this omission by charging the jury in its closing instructions that the Commonwealth had the burden of proving 'each and every element of the crimes charged' beyond a reasonable doubt." *Id.* (record citation omitted).

Appellant filed a petition for allowance of appeal, and this Court granted review to consider whether the trial court erred in allowing the Commonwealth to pose the above-quoted *voir dire* question to prospective jurors on the grounds that it "impermissibly sought to disclose what a juror's present opinion would have been under certain facts that were to be developed in the case, was in the nature of a jury instruction and/or was an incorrect statement of law." *Commonwealth v. Walker*, 316 A.3d 622-23 (Pa. filed Apr. 9, 2024) (order).

Preliminarily, the scope of *voir dire* examination is a matter within the discretion of the trial court, and the court's ruling on this issue will not be reversed absent an abuse of that discretion. *Commonwealth v. Richardson*, 473 A.2d 1361, 1363 (Pa. 1984). Furthermore, under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant has a constitutional right to an impartial jury at both the guilt and sentencing phases of trial.[10] Thus, while the scope of *voir dire* is within the sound discretion of the trial court, the exercise of the trial court's discretion, as well as the restriction upon inquiries at the request of counsel, are "subject to the essential demands of fairness." *Knight*, 241 A.3d at 639 (quoting *Morgan v. Illinois*, 504 U.S. 719, 730 (1992)). In addition, a trial court's rulings concerning the scope of *voir dire* must be

---

[10] The Sixth Amendment, which is applicable to the states through the Fourteenth Amendment, provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI.

considered in light of the factual circumstances of a particular criminal episode. *Richardson*, 473 A.2d at 1363; *Commonwealth v. Holt*, 273 A.3d 514, 546 (Pa. 2022) (same).

The purpose of *voir dire*

> is solely to ensure the [empaneling] of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. Neither counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of the case. *Voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies.

*Commonwealth v. Bomar*, 826 A.2d 831, 849 (Pa. 2003) (internal quotation marks and citations omitted); *see also Commonwealth v. Ellison*, 902 A.2d 419, 423 (Pa. 2006) (the sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury); *Commonwealth v. Paolello*, 665 A.2d 439, 451 (Pa. 1995) (*voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies).

Appellant contends that the *voir dire* question posed by the Commonwealth in this case was not designed to determine the qualifications of prospective jurors, reveal whether they had fixed opinions, or ascertain whether they would be able to follow the instructions of the trial judge, but, instead, was designed to probe how much evidence the potential jurors would require in order to convict him. He further suggests that the question was intended to elicit a basis for the Commonwealth's exercise of preemptory challenges, and he claims that the *voir dire* question was "an oblique way of asking potential jurors, '[a]re you the kind of person who would convict this defendant even though we won't present much evidence of his guilt?'" Appellant's Brief at 18. Along

these lines, Appellant submits that the standard juror information questionnaire[11] − which assesses whether a person is qualified to serve on a jury, whether they are capable of following the instructions of the trial judge, and whether they can keep an open mind and render a fair verdict − sufficiently addresses "*voir dire*'s purpose of securing a 'competent, fair, impartial and unprejudiced jury.'" *Id.* at 15. Accordingly, Appellant asserts that "[t]he only conceivable reason" why the Commonwealth posed the *voir dire* question was "to ascertain in advance how people might decide when there is a lack of corroborating evidence." *Id.* at 17.

Appellant additionally suggests that the reasoning of the Superior Court − that the question was intended to identify jurors who hold fixed beliefs that conflict with Section 3106 – "opens [a] Pandora's box," because it would allow "virtually any proposed *voir dire* question to be proper," including such questions as "Do you believe in self-defense?"; "Can you consider prior inconsistent statements only for impeachment purposes?"; and "Would you be willing to accept that a person of good character would be likely to commit a crime?" *Id.* at 23-24.

In further support of his argument that the trial court erred in permitting the Commonwealth to ask the *voir dire* question at issue, Appellant relies on several cases, discussed *infra*, in which this Court held that a proposed *voir dire* question was properly excluded because the purpose of the question went beyond ensuring a competent, fair, impartial, and unprejudiced jury.

The Commonwealth disputes Appellant's allegation that its purpose in posing the *voir dire* question was to determine the jurors' present impressions, what their opinions

---

[11] Rule 632 of our Rules of Criminal Procedure provides that, prior to *voir dire*, prospective jurors shall complete and verify a "standard, confidential juror information questionnaire," and any supplemental questionnaire provided by the court. Pa.R.Crim.P. 632(A)(1). Subsection (D) of Rule 632 specifies that "[j]uror information questionnaires shall be used in conjunction with the examination of the prospective jurors conducted by the judge or counsel pursuant to Rule 631(E)," which governs *voir dire*. Pa.R.Crim.P. 632(D).

would be if certain facts were developed at trial, or to test potential trial strategies. Rather, the Commonwealth maintains that its purpose in posing the *voir dire* question was to determine whether the potential jurors had "any fixed beliefs that conflict with section 3106," particularly, whether a juror believes that "a defendant's guilt can never be established beyond a reasonable doubt in a rape case without DNA or other corroborating forensic evidence," or that "a defendant's guilt can never be established beyond a reasonable doubt in cases where the evidence consists purely of the victim's word against the defendant's (so-called, he said-she said cases)." Commonwealth's Brief at 15.

The Commonwealth further avers that the propriety of this inquiry is supported by the specific language of Section 3106 and Pa.SSJI (Crim) § 4.13B, both of which demonstrate the General Assembly's recognition that "clarity as to the level of corroboration necessary in a sex assault prosecution may be called for." Commonwealth's Brief at 17. With respect to Appellant's suggestion that the Commonwealth posed the *voir dire* question in order to test potential trial strategies, the Commonwealth responds that it would never be a matter of "strategy" to proceed to trial with only the uncorroborated testimony of the victim; rather, when the Commonwealth tries a case "with only the uncorroborated testimony of the victim, that is because that is all the evidence it has." *Id.*

In response to Appellant's argument that use of the jury instruction questionnaire is sufficient to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury, the Commonwealth emphasizes that the questionnaire is required by Pa.R.Crim.P. 632, and the comment to Rule 632 specifically states that the questionnaire is only intended to expedite the *voir dire* process, and does not take the place of traditional *voir dire* questioning.[12]

---

[12] The Comment to Rule 632 provides:
(continued…)

Additionally, to the extent Appellant relies on specific cases to support his argument that the trial court erred in allowing the Commonwealth to pose the *voir dire* question at issue, the Commonwealth asserts that, because the scope of *voir dire* must be considered in light of the factual circumstances of a particular criminal episode, *see Holt*, 273 A.3d at 546, the fact that a trial court has prohibited a certain *voir dire* question in one case does not mean that the question is not proper in another case. Nonetheless, the Commonwealth contends that each of the cases relied on by Appellant is distinguishable. Again, we discuss these cases below.

Upon review, we hold that the trial court did not abuse its discretion in allowing the Commonwealth to pose its *voir dire* question in the instant case because the question was intended to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the trial court's instructions, and not, as Appellant suggests, to determine whether the jury would convict him despite not being presented with "much evidence of his guilt." Appellant's Brief at 18.

Initially, we observe that Appellant's assertion that the jury instruction questionnaire by itself should be deemed sufficient to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the trial court's instructions is specifically contradicted by the language of Rule 632(D), which provides

> Paragraph (D) makes it clear that juror information questionnaires are to be used in conjunction with the oral examination of the prospective jurors, and are not to be used as a substitute for the oral examination. Juror information questionnaires facilitate and expedite the *voir dire* examination by providing the trial judge and attorneys with basic background information about the jurors, thereby eliminating the need for many commonly asked questions. Although nothing in this rule is intended to preclude oral questioning during *voir dire*, the scope of *voir dire* is within the discretion of the trial judge.

Pa.R.Crim.P. 632 (Comment).

that "[j]uror information questionnaires shall be used *in conjunction* with the examination of the prospective jurors conducted by the judge or counsel." Pa.R.Crim.P. 632(D) (emphasis added). The Comment to Rule 632 likewise states: "juror information questionnaires are to be used in conjunction with the oral examination of the prospective jurors, *and are not to be used as a substitute for the oral examination.*" *Id.* (Comment) (emphasis added). The Comment further provides that the purpose of the juror information questionnaires is to "facilitate and expedite the *voir dire* examination," and it reiterates that the scope of *voir dire* is within the discretion of the trial judge. *Id.* Thus, Appellant's suggestion that *voir dire* is unnecessary to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury that is capable of following the trial court's instructions because prospective jurors are required to complete a jury instruction questionnaire which serves this purpose is without merit.

Additionally, we agree with the lower courts' conclusions that the challenged *voir dire* question was proper because the question was designed to ascertain whether potential jurors would be capable of following the trial court's instructions, rather than to probe the effectiveness of any particular trial strategy.

In *Commonwealth v. Montalvo*, 986 A.2d 84 (Pa. 2009), for example, this Court rejected a challenge to a *voir dire* question concerning jurors' ability to follow the legal principle that guilt may be established solely by circumstantial evidence. Montalvo was charged with the murder of his wife and another individual, and, although there was evidence that, the night before the murder, Montalvo told his brother that he would kill his wife, and Montalvo was seen later that same evening demanding entry into his wife's apartment, there were no eyewitnesses to the murder.

During *voir dire*, at the request of the Commonwealth, the trial court posed, *inter alia*, the following question to the jurors:

> Does anyone have any reservations or doubts about accepting the fact that a Defendant's guilt can be established solely by circumstantial evidence? And I will instruct you that the guilt of a Defendant may be established by circumstantial evidence alone but only if certain factors are met by the Commonwealth. Does anybody have a problem following the Court's instruction concerning circumstantial evidence?

*Id.* at 93 (record citations omitted). On appeal, we concluded that the trial court's question was intended only to ascertain whether the jurors were capable of following the trial court's instructions that a defendant may be convicted based on circumstantial evidence, and, thus, we held that the trial court did not abuse its discretion in asking the question.

To reiterate, the *voir dire* question in the instant case provided:

> Under Pennsylvania law, the testimony of the alleged victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in a sexual assault case. Thus, you may find the defendant guilty if the testimony of the alleged victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?

As the trial court observed, the first two sentences of this question are the same statements of the law that must be provided to the jury pursuant to Pa.SSJI (Crim) § 4.13B.[13] The last sentence of the question specifically asked whether the prospective jurors would be able to follow this undisputed principle of the law, which is the very purpose of *voir dire*.

Moreover, with respect to Appellant's reliance on prior decisions in which we have held specific *voir dire* questions to be improper, we conclude that those cases are factually distinguishable, and, thus, do not entitle Appellant to relief. Appellant first cites this

---

[13] In his Reply Brief, Appellant states that he "does not concede that jury instruction 4.13B is appropriate." Appellant's Reply Brief at 24. He contends that, "[l]ike the voir dire question at bar, instruction 4.13B is an inaccurate statement of law at worst and an incomplete one at best." *Id.* He continues: "When a judge gives that instruction at the close of trial, however, other instructions can add the missing information and provide needed context. The same is not true during voir dire." *Id.* We did not grant review to consider the propriety of the jury instruction 4.13B, so we do not further discuss this issue.

Court's decision in *Commonwealth v. Johnson*, 305 A.2d 5 (Pa. 1973), wherein defense counsel sought to ask prospective jurors if, *inter alia*, they had "any fixed opinions about the credibility of psychiatrists and their opinions?" *Id.* at 7. In holding that the trial court properly precluded this question, we explained that the "apparent purpose of this line of questioning was to obtain information as to the verdict which the juror would render upon the production of psychiatric evidence," and we reiterated that "the purpose of voir dire is not to determine in advance what a juror's attitude will likely be if certain facts develop during trial." *Id.* at 8.

Appellant next relies on *Holt*, *supra*, wherein the trial court prohibited the defense from posing the following *voir dire* question: "You may hear that the Defendant did not turn himself in and was only arrested after a four day police search or manhunt for his whereabouts. Would that fact alone cause you problems?" 273 A.3d at 546. On appeal, we determined that the trial court properly precluded the proposed question because it "appear[ed] to have been designed to inform [defense] counsel in advance what opinion a prospective juror might form when presented with evidence of [the defendant's] flight," and not whether jurors would be fair. *Id.* at 547. We further stated, "[a] prospective juror's personal views are of no moment unless these opinions 'are so deeply embedded as to render that person incapable of accepting and applying the law as given by the court.'" *Id.* (citation omitted).

Appellant also cites *Paolello*, *supra*, wherein the defendant was accused of giving the victim at least three large glasses of vodka, resulting in the victim's death from alcohol poisoning. During *voir dire*, the defense sought to question prospective jurors regarding their "opinions, attitudes, and involvement with alcohol." 665 A.2d at 451. The trial court prohibited this line of questioning, and, on appeal, we held that the trial court properly excluded the *voir dire* question because "the purpose of voir dire is to empanel a fair and

impartial jury, not to empanel a jury sympathetic to positions or beliefs of either party," and "[v]oir dire is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." *Id.*

Appellant additionally relies on this Court's decision in *Commonwealth v. Moon*, 132 A.2d 224 (Pa. 1957), wherein counsel for the defendant, who pled guilty to first-degree murder for shooting the trial judge who presided over a hearing on his failure to comply with a support order, attempted to pose the following *voir dire* question to a juror at his subsequent penalty hearing:

> Mrs. Knapp, again under the law of Pennsylvania, a person who at the time of the commission of any act which would otherwise be criminal, is unable to tell the difference between right and wrong and to appreciate the consequences of his acts, such a person is entitled to be found not guilty by reason of insanity. If you found from a fair preponderance of the evidence, that the accused at the time of the commission of this act, was unable to distinguish right from wrong and unable to appreciate the consequences of his act, would you then find him not guilty by reason of insanity?

*Id.* at 226. The trial court sustained the Commonwealth's objection to the question, and, on appeal, we affirmed its holding. We explained that, in conducting *voir dire*,

> considerable latitude must be permitted to elicit the necessary information, but it is to be strictly confined to inquiries disclosing qualifications, or lack of them, *and not extended so as to include hypothetical questions, when their evident purpose is to have the jurors indicate, in advance, what their decisions will be under a certain state of the evidence or upon a certain state of facts.*

*Id.* (emphasis added).

Finally, Appellant cites our decision in *Bomar*, *supra*, wherein defense counsel sought to ask prospective jurors if they would "want to hear" or "would . . . consider evidence of the defendant's childhood." 826 A.2d at 847. Defense counsel also attempted to ask whether mitigating circumstances, such as the defendant's character,

record, and good deeds, would "be considered" by the jurors or whether the jurors would consider them "irrelevant." *Id.* at 848. The trial court prohibited defense counsel from posing those questions during *voir dire*, but rephrased the questions to allow defense counsel to ask the jury if they would consider both aggravating and mitigating circumstances that were presented. On appeal, we explained that the trial court correctly disallowed the *voir dire* questions proposed by the defense because they "were simply not relevant in seeking to determine whether the jurors would be competent, fair, impartial and unprejudiced. Rather, the queries at issue sought to gauge the efficacy of potential mitigation strategies." *Id.* at 849*.*

In each of the above cases relied on by Appellant, we determined that the trial court properly prohibited the *voir dire* questions because the questions either went beyond the legitimate purpose of securing a competent, fair, impartial, and unprejudiced jury, capable of following the trial court's instructions, or comprised hypothetical questions designed to reveal the prospective jurors' likely decisions when presented with particular evidence.

In contrast, the *voir dire* question in the instant case was not an attempt to discern prospective jurors' existing opinions or beliefs on evidence that might be introduced at trial, nor did it attempt to probe how the jurors might react to the presentation of any particular type of evidence. The question was not posed as a matter of trial strategy, but merely sought to confirm that the prospective jurors would be capable of following a particular principle of law applicable to sexual assault cases. Indeed, as noted by the Commonwealth, regardless of the prospective jurors' answers to the *voir dire* question, its "trial strategy" would have remained the same, as it could not change the fact that the only testimony implicating Appellant was that of the alleged victim.

Appellant next contends that the trial court erred in allowing the Commonwealth's *voir dire* question because it was in the nature of a jury instruction and concerned a legal principle. In this regard, Appellant argues that the trial judge alone has the authority to instruct jurors on the relevant legal principles in a case, and such instructions should be provided only after the jury is empaneled. In support of his argument, he relies on, *inter alia*, *Commonwealth v. Calhoun*, 86 A. 472, 474-75 (Pa. 1913) (holding that trial judge properly prohibited defense counsel from asking jurors "What do you understand by the words, 'a person of sound memory and discretion'?" and "Would you deem [defendant] legally responsible" for the crime if the testimony demonstrated that he was insane at the time he committed the murder, as these questions impermissibly sought to examine the proposed jurors on their understanding of the law); *Holt*, 273 A.3d at 546-47 (asking prospective jurors whether defendant's flight after the crime "[w]ould . . . cause [them] problems" or prevent them from being a "fair and impartial juror" properly precluded because trial court instructed the jury that it could not find the defendant guilty solely on the basis of flight or concealment); *Moon*, 132 A.2d at 226 (*voir dire* question that defined insanity defense and asked jurors if they would find the defendant not guilty by reason of insanity if they found he was unable to distinguish right from wrong when he committed the crime, or was unable to appreciate the consequences of his act, properly prohibited); *Commonwealth v. Kingsley*, 391 A.2d 1027, 1033 (Pa. 1978) (holding that trial court properly prohibited defendant's proposed *voir dire* questions because "voir dire questions concerning legal principles [are] improper questions");[14] and *Johnson*, 305 A.2d at 8 (trial

---

[14] The questions prohibited in *Kingsley* were as follows: "Do you have any problem in your own conscience with the legal principle that, as [Defendant] sits here now, he is presumed innocent"; "Do you have any problem in your own conscience that the burden of proof is upon the Commonwealth to prove beyond a reasonable doubt that the Defendant is guilty of the charges against him"; "Do you have any problem in your own conscience that it is incumbent upon the Commonwealth to prove the charges here (continued…)

court properly refused to allow counsel to examine prospective jurors as to their ability to accept and apply the law because the court had already specifically instructed each prospective juror that they must accept the law as provided by the court and apply that law to the facts).[15]

Appellant concedes that this Court has recognized an exception to this rule in capital cases, such that prospective jurors may be asked if they would be capable of applying the law and imposing the death penalty where the evidence supports it, due to the existence of a "widespread public concern" that individuals who oppose the death penalty would be unable to follow the trial court's instructions in such cases. *See* Appellant's Brief at 29 (citing *Commonwealth v. Fisher*, 290 A.2d 262, 264 (Pa. 1972) (holding that trial court properly rejected the appellant's request to *voir dire* the jury regarding the subject of self-defense because there "has been no showing of a widespread public concern with a juror's ability to impartially and fairly apply the law of self-defense similar to that involving the imposition of the death penalty"), citing *Witherspoon v. Illinois*, 391 U.S. 510, 519 (1968)). Appellant maintains, however, that the Commonwealth failed to show there is any "widespread concern" concerning jurors'

---

beyond a reasonable doubt and it is not incumbent upon [Defendant], who is presumed innocent, to prove he is not guilty"; "Are you willing to acquit the Defendant unless the Commonwealth of Pennsylvania overcomes the presumption of innocence and proves the charges beyond a reasonable doubt"; "Do you agree that the presumption of innocence is so strong that the Defendant may even rely upon it and that he has no duty to take the stand to prove his innocence"; "Do you agree that you will acquit [Defendant] unless the Commonwealth . . . proves each and every element of the offenses charged beyond a reasonable doubt"; and "Do you agree that even if the Commonwealth . . . proves some of the elements of the offenses charged but does not prove each and every element of the offenses charged beyond a reasonable doubt, that you will acquit [Defendant]." *Kingsley*, 391 A.2d at 1033.

[15] While Appellant cites several Superior Court cases to support his argument, we note that decisions of the intermediate appellate court are not binding on this Court. *Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 93 (Pa. 2023).

ability to "fairly weigh complainant evidence in sexual offense cases or that they hold the belief that uncorroborated testimony is insufficient to convict." Appellant's Brief at 30.

Appellant further asserts that he was prejudiced by the Commonwealth's *voir dire* question because the question "gave the legal principle embedded within it heightened importance." *Id.* at 35 (emphasis omitted). He posits that allowing *voir dire* questions regarding prospective jurors' understanding of legal principles could "commit [jurors] to definite ideas or views" before they hear any evidence. *Id.* at 37 (quoting *Moon*, 132 A.2d at 226). Along these lines, he disputes the Superior Court's determination that the trial court's jury instructions cured any potential error in singling out the legal principle, noting that the harm had already occurred because it affected the composition of the jury.

As additional support for his claim of prejudice, Appellant argues that the *voir dire* question contained an incomplete or incorrect statement of the law, as it failed to inform the jury that the Commonwealth must prove "every element of a given charge beyond a reasonable doubt to convict." *Id.* (emphasis omitted). Furthermore, Appellant contends that the *voir dire* question incorrectly suggested that a different standard exists for determining a complainant's credibility in sexual assault cases when, in fact, Section 3106 instructs that the jury shall not be instructed to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.

The Commonwealth responds that there is no rule that prohibits trial courts from exercising their discretion to permit or preclude litigants from posing *voir dire* questions that contain information which may also be covered in the court's jury instructions. It further notes that, to the extent Appellant suggests there is such a rule, his position is based on cases in which the trial court *refused* to permit a specific *voir dire* question because the subject of the question would be covered by the court's charge, and this Court ultimately determined that the trial court had not erred. According to the

Commonwealth, "just because a court *may refuse* to ask a particular voir dire question, on the grounds that the question will later be covered in the court's charge, it does not automatically follow that all other courts *must refuse* to do so as well."  Commonwealth's Brief at 25 (emphasis original).  In the Commonwealth's view, such logic would eliminate trial courts' discretion in the *voir dire* process.

In response to Appellant's claim of prejudice, the Commonwealth suggests that, at most, Appellant suffered *de minimis* prejudice, and that any error by the trial court in allowing the *voir dire* question was harmless because the question accurately stated the law, the trial court instructed the jury in accordance with Pa.SSJI (Crim) § 4.13B, and juries are presumed to follow the court's instructions.

After careful review, we conclude that, under the facts of the instant case, the trial court did not abuse its discretion by allowing the Commonwealth to pose the challenged *voir dire* question which addressed a principle of law that subsequently was covered in the trial court's jury instructions.  Preliminarily, we observe that several of the cases Appellant relies upon, including *Holt* and *Moon*, involved proposed *voir dire* questions that were deemed improper because they were designed to reveal the prospective jurors' likely decisions when presented with particular evidence, not their ability to follow a specific principle of law.

Although Appellant contends that, in *Calhoun* and *Kingsley*, the proposed *voir dire* questions were deemed improper because they examined a proposed juror on his current understanding of specific legal principles, those cases do not stand for the proposition that a *voir dire* question that asks jurors whether they will be able to follow a correctly-stated principle of law, when the trial court subsequently provides accurate and correct jury instructions as to applicable principles of law, constitutes reversible error.  Indeed, it is the trial judge's responsibility to instruct the jury on the legal principles applicable to the

facts presented at trial, *see Commonwealth v. Cox*, 686 A.2d 1279, 1286 (Pa. 1996), and we decline to restrict the broad discretion trial courts are afforded in matters of *voir dire*.

We recognize that, prior to our decision in *Montalvo*, this Court has suggested that *voir dire* questions which ask whether a juror would be capable of following a legal principle may be improper. *See, e.g.*, *Kingsley*, 391 A.2d at 1033 ("We can find no error in the court's refusal [to allow certain questions], as we have held voir dire questions concerning legal principles to be improper questions." (citing *Commonwealth v. Lopinson*, 234 A.2d 552 (Pa. 1967)). However, we conclude that, where a defendant is charged with a sexual offense under Chapter 31 of the Crimes Code, as in the instant case, asking prospective jurors during *voir dire* if they would be capable of following the established legal principle that the testimony of the victim, standing alone, if believed by the juror, is sufficient proof upon which to find a defendant guilty, is not error.

First, as discussed above, revised Pa.SSJI (Crim) § 4.13B contemplates that the trial court's instruction to jurors indicate that the testimony of a complainant need not be corroborated. *See supra* note 9. Indeed, it has been observed that:

> [t]he rule that corroboration is not required of the victim's testimony in a prosecution for nonconsensual sodomy is based on the theory that such an offense is rarely, if ever, committed under circumstances permitting knowledge and observation by persons other than the accused and the complaining witness, not all such offenses are capable of corroboration, and it would be unrealistic and unreasonable to require proof that could not be procured.

70C Am. Jur. 2d Sodomy § 79. In light of the fact that sexual offenses under Chapter 31 are unique in that, in most cases, there is no witness to the offense, it is reasonable, in our view, to allow the Commonwealth to inquire of prospective jurors whether they would be capable of following the trial court's instructions regarding the law that the alleged victim's testimony, if believed by the juror, need not be corroborated.

Second, the evolution of the language of Section 3106 suggests an acceptance of the premise that jurors may possess an inherent belief that a complainant's uncorroborated testimony alone, even if believed, can never be sufficient to support a conviction. Specifically, when 18 Pa.C.S. § 3106 originally was enacted in 1972, it provided:

> In any prosecution before a jury for an offense under this chapter, the jury shall be instructed to evaluate the testimony of a victim or complaining witness with special care in view of the emotional involvement of the witness and the difficulty of determining the truth with respect to alleged sexual activities carried out in private.

Act of Dec. 6, 1972, P.L. 1482, No. 334, § 3106, repealed by Act of Nov. 21, 1973, P.L. 339, No. 115.

Notably, in 1976, Section 3106 was amended to read:

> The credibility of an alleged victim of an offense under this chapter shall be determined by the same standard as is the credibility of an alleged victim of any other crime. The testimony of a victim need not be corroborated in prosecutions under this chapter. In any prosecution before a jury for an offense under this chapter, no instructions shall be given cautioning the jury to view the alleged victim's testimony in any other way than that in which all victims' testimony is viewed.

Act of May 18, 1976, P.L. 120, No. 53, § 2. Significantly, the 1976 amendment to Section 3106 eliminated the requirement that the jury be instructed to evaluate the testimony of a complainant with "special care in view of the emotional involvement of the witness and the difficulty of determining the truth with respect to alleged sexual activities carried out in private."

Section 3106 was further amended in 1995, and now provides:

> The credibility of a complainant of an offense under this chapter shall be determined by the same standard as is the credibility of a complainant of any other crime. The testimony

of a complainant need not be corroborated in prosecutions under this chapter. No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed.

Act of March 31, 1995, P.L. 985, No. 10, § 3.

As the above-noted amendments to Section 3106 reveal a recognition by the legislature that jurors may possess an inherent belief that a complainant's uncorroborated testimony alone, even if believed, can never be sufficient to support a conviction, we conclude that the Commonwealth should be permitted to *voir dire* prospective jurors as to their ability to put aside any such inherent beliefs and follow the trial court's instructions that an alleged victim's testimony, if believed by the juror, need not be corroborated.[16]

---

[16] We observe that at least one of our sister courts has permitted voir dire questions regarding the jurors' ability to follow a trial court's non-corroboration instruction in sexual assault cases. In *State v. Ross*, 986 N.W.2d 581 (Iowa 2023), the appellant alleged that he was prejudiced by the following instruction to the jury because it specifically referenced the victims by name, thereby highlighting their particular testimony:

You should evaluate the testimony of [L.C. or K.C.] the same way you evaluate the testimony of any other witness. The law does not require that the testimony of [L.C. or K.C.] be corroborated in order to prove that she was sexually abused. You may find the Defendant guilty of Sexual Abuse if [L.C.'s or K.C.'s] testimony convinces you of guilt beyond a reasonable doubt.

*Id.* at 584 (alteration original). Initially, the Iowa Supreme Court acknowledged "the State's interest in sex-abuse cases in dispelling the misconception that alleged victims' testimony requires corroboration to support a conviction," but opined that "those interests can be advanced by a *nonparticularized* instruction *applicable to all witness testimony*." *Id.* at 588 (emphasis original). Moreover, the court questioned the necessity of the trial court's jury instruction in that particular case, noting that:

the State gave examples of three jurors' responses to *voir dire* questions about the need for victim-witness corroboration to support its position that the noncorroboration instruction was necessary here. None of those three jurors were selected for the final jury panel. And the State candidly admits that "other panelists said they understood that they could rely on testimony as proof that the abuse occurred." *Presumably, then, the voir dire process worked as intended to remove jurors who harbored such attitudes and were unwilling to set them aside.*

(continued…)

As a final matter, we reject Appellant's claim that he was prejudiced by the *voir dire* question posed in the instant case. First, there is no basis for Appellant's argument that the *voir dire* question was "incomplete," as it was not a jury instruction. Further, to the extent the *voir dire* question referenced a legal principle that would subsequently be addressed by the trial court during its jury instructions, as discussed above, the *voir dire* question was consistent with the applicable jury instruction provided in Pa.SSJI (Crim) § 4.13(B), and consistent with 18 Pa.C.S. § 3106. Finally, the question in no way suggested that there was a different standard for evaluating the credibility of a sexual assault victim versus any other complainant.

For the reasons set forth above, we conclude that, under the facts of the case *sub judice*, the trial court did not abuse its discretion in permitting the Commonwealth to pose the challenged *voir dire* question.

Judgment of sentence affirmed.

Justices Donohue, Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice Wecht files a concurring opinion.

---

*Id.* at 588 n.4 (emphasis added). Ultimately, the court in *Ross* vacated the appellant's judgment of sentence because it determined that the presumption of prejudice arising from the trial court's non-corroboration instruction, which improperly mentioned the victims by name, was not overcome.